UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON

| | |
|---|---|
| GREGORY LEE MILLER, ) | |
| ) | |
| Plaintiff, ) | No. 5:23-CV-209-HAI |
| ) | |
| v. ) | |
| ) | MEMORANDUM OPINION |
| MARTIN O'MALLEY, ) | & ORDER |
| *Commissioner of Social Security*, ) | |
| ) | |
| Defendant. ) | |
| ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This case arises after a prior remand from this Court. In March 2017, Plaintiff Gregory Miller filed a Title XVI application for supplemental security income.[1] The Social Security Administration denied Miller's 2017 claims initially and upon reconsideration. Administrative Law Judge ("ALJ") Kendra Kleber held a series of two hearings in February and March of 2019. She issued an unfavorable decision on June 13, 2019. *See* D.E. 10 at 700-15 (2019 ALJ opinion). Miller later appealed to this Court. The Commissioner moved that the matter be remanded, and Magistrate Judge Atkins remanded the case back to the agency. *Miller v. Saul*, No. 5:20-CV-321-EBA, D.E. 22.

Upon remand, the Appeals Council ordered ALJ Kleber to conduct a new hearing. Miller testified at the December 2, 2021 hearing, represented by non-attorney Kevin McDowell. Impartial vocational expert ("VE") Brenda White also testified. D.E. 10 at 733. The ALJ issued another unfavorable decision on February 23, 2022. D.E. 10 at 732-751. It was upheld on administrative appeal on May 22, 2023. *Id*. at 715.

---

[1] Miller had filed other Title XVI applications in the past. Most recently, he filed a claim on January 23, 2014, that was denied by ALJ Christopher Sheppard on December 1, 2015, following a hearing.

1

On July 10, 2023, Miller, through counsel, brought this action under 42 U.S.C. §§ 405(g) and 1383(c) to obtain judicial review of the ALJ's 2022 decision denying his application for supplemental security income. D.E. 1. In August 2023, the parties consented to the referral of this matter to a magistrate judge. D.E. 4, 5. Judge Atkins recused, and the case was assigned to the undersigned. D.E. 7. The parties filed briefs, including a reply. D.E. 13, 15, 16. The matter is now referred to the undersigned to conduct all proceedings and order the entry of a final judgment in accordance with 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73. The Court, having reviewed the record and for the reasons stated herein, **DENIES** Plaintiff's request to remand these proceedings.

## I. The ALJ's Decision

Under 20 C.F.R. §§ 404.1520, 416.920, an ALJ conducts a five-step analysis to evaluate a disability claim.[2] The ALJ followed these procedures in this case.

At the first step, if a claimant is working at a substantial gainful activity, he is not disabled. 20 C.F.R. § 404.1520(b). In this case, the ALJ found that Miller "has not engaged in substantial gainful activity since March 9, 2017, the application date." D.E. 10 at 736.

At the second step, if a claimant does not have any impairment or combination of impairments which significantly limit his physical or mental ability to do basic work activities, then he does not have a severe impairment and is not disabled. 20 C.F.R. § 404.1520(c). In this

---

[2] The Sixth Circuit summarized this process in *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469 (6th Cir. 2003):

> To determine if a claimant is disabled within the meaning of the Act, the ALJ employs a five-step inquiry defined in 20 C.F.R. § 404.1520. Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work, but at step five of the inquiry . . . the burden shifts to the Commissioner to identify a significant number of jobs in the economy that accommodate the claimant's residual functional capacity (determined at step four) and vocational profile.

*Id.* at 474 (internal citations omitted).

case, the ALJ noted: "Judge Sheppard found Mr. Miller to have the following severe impairments in December 2015, and they continue to be severe: lumbago; obesity; borderline intellectual functioning (BIF); affective disorder; and anxiety disorder (20 C.F.R. § 416.920(c))." D.E. 10 at 736. Miller does not argue the ALJ should have identified additional severe impairments.

At the third step, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, then he is disabled. 20 C.F.R. § 404.1520(d). The ALJ found Miller failed to meet this standard. D.E. 10 at 737-41. The ALJ considered several listings but found none of them satisfied in Miller's case. *Id*. Relevant to this appeal, the ALJ considered mental impairments under Listings 12.04, 12.05, 12.06, and 12.11. *Id*. Miller does not appear to challenge this determination that he fails to meet or medically equal the criteria for any of these listings. His briefing nowhere addresses the elements of these or any other listed impairments.

Some aspects of the ALJs' step-three consideration of potential mental impairments are relevant to the parties' arguments. The ALJ considered the four different domains of the "paragraph B criteria" and found that Miller has "moderate limitation" in all four domains: (1) understanding, remembering, or applying information; (2) interacting with others; (3) concentrating, persisting, and maintaining pace; and (4) adapting or managing oneself. D.E. 10 at 738-39. In these analyses, the SSA uses a five-point rating scale of increasing limitation "consisting of no limitation, mild limitation, moderate limitation, marked limitation, and extreme limitation." 20 C.F.R. § Pt. 404, Subpt. P, App. 1. The regulations define these five levels of limitations as follows:

> a. No limitation (or none). You are able to function in this area independently, appropriately, effectively, and on a sustained basis.

3

> b. Mild limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is slightly limited.
>
> c. Moderate limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is fair.
>
> d. Marked limitation. Your functioning in this area independently, appropriately, effectively, and on a sustained basis is seriously limited.
>
> e. Extreme limitation. You are not able to function in this area independently, appropriately, effectively, and on a sustained basis.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.00F.

Thus, the ALJ found Miller had moderate (*i.e.*, mid-range or "fair") limitations in all four mental-impairment domains. *See id.*, Listing 12.00, describing "Mental Disorders." Miller particularly focuses on one of the four domains—concentrating, persisting, or maintaining pace. The regulations describe this domain as follows:

> Concentrating, persisting, or maintaining pace. This area of mental functioning refers to the abilities to focus attention on work activities and to stay on-task at a sustained rate. Examples include: Initiating and performing a task that you understand and know how to do; working at an appropriate and consistent pace; completing tasks in a timely manner; ignoring or avoiding distractions while working; changing activities or work settings without being disruptive; working close to or with others without interrupting or distracting them; sustaining an ordinary routine and regular attendance at work; and working a full day without needing more than the allotted number or length of rest periods during the day. These examples illustrate the nature of this area of mental functioning. We do not require documentation of all of the examples.

20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 11.00(G)(3)(b)(iii) ("Neurological Disorders").

If, as here, a claimant is found non-disabled at step three, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"), which is his maximum ability to do physical and mental work activities on a sustained basis despite limitations from his impairments. The ALJ found:

4

> Mr. Miller has the residual functional capacity to perform a range of medium work as defined in 20 C.F.R. § 416.967(c). Specifically, he is able to lift or carry up to 50 pounds occasionally or up to 25 pounds frequently, and he is able to stand for up to 6 hours out of 8, walk for up to 6 hours out of 8, or sit for up to 6 hours out of 8. Mr. Miller is able to perform work that does not involve written instructions and that does not require written reports. He is able to understand, remember, and perform simple tasks, defined as those which can be learned after a short demonstration or within 30 days. Mr. Miller is able to maintain attention and concentration for tasks requiring some independent judgment, involving minimal variations, over 2-hour periods with regular breaks. He is able to tolerate occasional interaction with the public, coworkers, or supervisors. Mr. Miller is able to handle changes in routine work setting. He is able to be aware of normal hazards and take appropriate precautions. The work he can perform is low stress, defined as requiring no more than occasional decision-making.

D.E. 10 at 741. ALJ Kleber's 2022 RFC is different from the RFC she assigned in 2019 in several respects. In 2019, the ALJ found that Miller:

> has the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b) except [he] can lift 20 [pounds] occasionally, 10 pounds frequently; can stand for 6 hours in an 8-hour workday, walk for 6 hours in an 8-hour workday, or sit for 6 hours in an 8-hour workday; claimant can perform simple tasks, maintain attention for 2 hour periods, perform activities on schedule and maintain regular attendance, [he is] able to keep an ordinary routine without special supervision, work near or with others without distraction, make simple work related decisions, can accept instructions and respond appropriately to criticism from supervisor, can tolerate occasional interaction with public, coworkers, supervisors, can handle changes in routine work setting, can be aware of normal hazards and take appropriate precautions, provided the work is low stress, defined as no more than occasional decision making.

D.E. 10 at 704.[3]

And, in 2015, ALJ Sheppard assigned the following RFC:

---

[3] And, in 2015, ALJ Sheppard assigned the following RFC:

> [T]he claimant has the residual functional capacity to perform medium work as defined in 20 C:FR 416.967 ( c) as the claimant can lift 50 pounds occasionally and 25 pounds frequently; can sit, stand and walk six hours each; can push/pull the same weights that he can lift/carry; can understand, remember and carryout only simple, routine tasks; can use judgment to make simple work-related decisions; should have no more than occasional interaction with supervisors and coworkers and occasional contact with the public; and is limited to few changes in a routine work setting defined as occasional decision making to complete simple tasks.

D.E. 10 at 65. The ALJ in 2022 explained that she was adopting ALJ Sheppard's "physical residual functional capacity" and "some of the mental limitations, with some adjustments in light of the passage of time and new medical records." D.E. 10 at 741.

5

> [T]he claimant has the residual functional capacity to perform medium work as defined in 20 C:FR 416.967 ( c) as the claimant can lift 50 pounds occasionally and 25 pounds frequently; can sit, stand and walk six hours each; can push/pull the same weights that he can lift/carry; can understand, remember and carryout only simple, routine tasks; can use judgment to make simple work-related decisions; should have no more than occasional interaction with supervisors and coworkers and occasional contact with the public; and is limited to few changes in a routine work setting defined as occasional decision making to complete simple tasks.

D.E. 10 at 65. ALJ Kleber in 2022 explained that she was adopting ALJ Sheppard's "physical residual functional capacity" and "some of the mental limitations, with some adjustments in light of the passage of time and new medical records." D.E. 10 at 741.

Miller objects to the 2022 RFC finding. He argues ALJ Kleber erred in either not including additional work limitations based on his mental impairments or in failing to adequately explain why such mental-impairment-based limitations were not included in the RFC.

At the fourth step, if a claimant's impairments do not prevent him from doing past relevant work (given the ALJ's assessment of the claimant's residual functional capacity), he is not disabled. 20 C.F.R. § 404.1520(f). The ALJ found that Miller had no past relevant work. D.E. 10 at 749.

At the fifth step, if a claimant's impairments (considering his RFC, age, education, and past work) do not prevent him from doing other work that exists in the national economy, he is not disabled. 20 C.F.R. § 404.1520(g). The ALJ found Miller was not disabled at this step. D.E. 10 at 750-51. The ALJ explained:

> If Mr. Miller had the residual functional capacity to perform the full range of medium work, a finding of "not disabled" would be directed by Medical-Vocational Rules 203.25 and Rule 203.18. However, additional limitations have impeded Mr. Miller's ability to perform all or substantially all of the requirements of this level of work.

*Id*. at 750. Accordingly, the ALJ asked the vocational expert "whether jobs exist in the national economy for an individual with Mr. Miller's age, education, work experience, and residual functional capacity." *Id*. The expert provided a list of jobs including drier attendant, box bender, and bus cleaner. *Id*. at 750-51. Because sufficient work existed in the national economy that Miller could perform, the ALJ found him "not disabled" as defined by the regulations. *Id*. at 751.

Accordingly, on February 23, 2022, the ALJ issued an unfavorable decision, finding that Miller was not disabled. The Appeals Council declined to review the ALJ's decision on May 22, 2023. *Id*. at 715.

## II. Framework for Judicial Review

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). Judicial review of the denial of a claim for Social Security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). "Substantial evidence" is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994). The substantial evidence standard "presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court." *Mullen v. Bowen*, 800 F.2d 535, 545 (6th Cir. 1986) (*en banc*) (quotes and citations omitted).

In determining the existence of substantial evidence, courts must examine the record as a whole. *Mullen*, 800 F.2d at 545 (citing *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 535 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983)). However, courts are not to conduct a *de novo* review, resolve conflicts in evidence, or make credibility determinations. *Id.* (citations omitted); *see also Bradley v. Sec'y of Health & Human Servs.*, 862 F.2d 1224, 1228 (6th Cir. 1988). Rather, if the ALJ's decision is supported by substantial evidence, it must be affirmed even if the reviewing court would decide the matter differently, and even if substantial evidence also supports the opposite conclusion. *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 389-90 (6th Cir. 1999); *see also Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993); *Mullen*, 800 F.2d at 545; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059 (6th Cir. 1983).

Under the current rules, all medical opinions are weighed in light of several factors: supportability, consistency, relationship with the claimant, specialization, and any other relevant factors. 20 C.F.R. § 416.920c(c). Supportability and consistency "are the most important factors" in weighing medical opinions. *Id*. § 416.920c(b)(2).

Disability determinations also often hinge on the claimant's credibility. However, Miller raises no challenge to the ALJ's credibility findings.

Finally, issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. *United States v. Kerns*, 9 F.4th 342, 351 (6th Cir. 2021); *Strickland v. City of Detroit*, 995 F.3d 495, 511 (6th Cir. 2021).

### III. Mental-Health Limitations

Miller summarizes his argument for remand as follows:

> The ALJ found moderate limitations in concentration, persistence and pace supported by the record but failed to properly account for such limitations within the RFC; thus, failing to comply with remand orders from the Appeals Council.

8

D.E. 13 at 1, 7.

Concerning the Appeals Council, near the beginning of her opinion, the ALJ noted some specific directives from the Appeals Council. These included, among others,

- Further evaluate Mr. Miller's mental impairments in accordance with the special technique described in 20 C.F.R. § 416.920a, documenting application of the technique in the decision by providing specific findings and appropriate rationale for each of the functional areas described in 20 C.F.R. § 416.920a(c).

- Give further consideration to the non-treating and non-examining source opinions pursuant to the provisions of 20 C.F.R. § 416.927, and explain the weight given to such opinion evidence.

- Give further consideration to Mr. Miller's maximum residual functional capacity and provide appropriate rationale with specific references to evidence of record in support of the assessed limitations (20 C.F.R. § 416.945; SSRs 85-16 and 96-8p).

D.E. 10 at 732.

As noted, at step three, the ALJ found "moderate" limitation in all four domains of the "Paragraph B" mental-health criteria. D.E. 10 at 738-39. Under the regulations, to say that Miller has "moderate" limitations means that his mental capabilities in each domain are "fair," which falls in between "slightly limited" and "seriously limited." 20 C.F.R. § Pt. 404, Subpt. P, App. 1, Listing 12.00F2. Miller focuses on one of the four domains—concentration, persistence, or maintaining pace. D.E. 13 at 7-8. He argues this moderate limitation (discussed at step three) is not properly incorporated into the RFC.

> In addition to the literacy restriction, the 2022 RFC says Miller
>
> is able to understand, remember, and perform simple tasks, defined as those which can be learned after a short demonstration or within 30 days. Mr. Miller is able to maintain attention and concentration for tasks requiring some independent judgment, involving minimal variations, over 2-hour periods with regular breaks. He is able to tolerate occasional interaction with the public, coworkers, or supervisors. Mr. Miller is able to handle changes in routine work setting. He is able to be aware of normal hazards and take appropriate precautions. The work he can perform is low stress, defined as requiring no more than occasional decision-making.

9

D.E. 10 at 741.

Miller argues this RFC is unsupported by substantial evidence and fails to sufficiently account for his moderate limitation in concentration, persistence, and pace. Yet he does not explain what specific additional restrictions should have been included.

First, Miller argues, "An RFC determination that a plaintiff can perform simple, routine, unskilled work does not constitute a limitation addressing a moderate limitation on concentration, persistence, or pace." D.E. 13 at 8-9. He says that a limitation to "simple" or "low-stress" work is inadequate. *Id*. at 9. The RFC here, quoted above, is more robust than simply a limitation to "simple" or "low-stress" work.

Miller cites a number of cases in support of this argument. The first is *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 516-17 (6th Cir. 2010). D.E. 13 at 9. In *Ealy*, the ALJ and the state agency psychological consultant agreed that Ealy could only "complete simple repetitive tasks" in two-hour segments over an eight-hour day where speed was not critical. *Id*. at 516. Yet the RFC communicated to the vocational expert failed to include this restriction.

> The ALJ's streamlined hypothetical omitted these speed- and pace-based restrictions completely. The hypothetical posed by the ALJ should have included the restriction that Ealy could work two-hour work segments during an eight-hour work day, and that speed of his performance could not be critical to his job. Accordingly, Ealy's limitations were not fully conveyed to the vocational expert.

*Id*. Here, in contrast, the ALJ's RFC included a restriction that Miller could at most "maintain attention and concentration for tasks requiring some independent judgment, involving minimal variations, over 2-hour periods with regular breaks." D.E. 10 at 741. This is almost exactly the limitation the *Ealy* ALJ erred by omitting. *Ealy* is readily distinguishable. Miller also cites *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004). D.E. 13 at 9. The Court in *Webb* held that hypothetical questions posed to vocational experts are not required to include

10

lists of the claimant's medical conditions. *Webb*, 368 F.3d at 633. It is not clear how *Webb* applies to this case. Miller additionally cites from outside the Sixth Circuit, but none of them are binding or persuasive as to the instant case. *See* D.E. 13 at 9; D.E. 15 at 11.

An ALJ "is required to consider the effects of both severe and non-severe impairments in determining the RFC." *Kohne v. Kijakazi*, No. 2:23-CV-37-DCR, 2023 WL 5220853, at *4 (E.D. Ky. Aug. 14, 2023). However, findings made at earlier steps do not automatically carry over into the RFC. *Richardson v. Saul*, 511 F. Supp. 3d 791, 798 (E.D. Ky. 2021). In drafting the RFC, the ALJ is required to consider a claimant's non-severe mental health limitations but is not required to inevitably incorporate them in the RFC. *Karen Marie M. v. Kijakazi*, No. 2:20-CV-416-DCN-REP, 2021 WL 6010422, at *6 (D. Idaho Nov. 19, 2021), *report and recommendation adopted*, 2021 WL 5999132 (D. Idaho Dec. 20, 2021) (citing *Taylor v. Berryhill*, No. 17-CV-11444, 2018 WL 3887521, at *6 (E.D. Mich. July 5, 2018), *report and recommendation adopted*, 2018 WL 3870066 (E.D. Mich. Aug. 15, 2018)). "Severe or non-severe, an ALJ need only include limitations arising from an impairment where the impairment affects a claimant's capacity to work." *Caudill v. Comm'r of Soc. Sec.*, No. 2:16-CV-818, 2017 WL 3587217, at *6 (S.D. Ohio Aug. 21, 2017), *report and recommendation adopted*, 2017 WL 4222983 (S.D. Ohio Sept. 21, 2017)).

Miller has not pointed to a case wherein a court in this Circuit held that a finding of moderate limitation in concentration/persistence/pace necessarily translates into RFC limitations.

However, even if Miller is correct in stating that a limitation to "simple work" is inadequate to account for a moderate limitation in concentration, persistence, and pace, the 2022 RFC contains mental-activity restrictions more robust than a bare limitation to simple work. The RFC limits Miller to tasks that can be learned with a short demonstration or within 30 days. His

11

attention and concentration are limited to tasks "involving minimal variations, over 2-hour periods with regular breaks." He is limited to only occasional interaction with the public, coworkers, and supervisors. He is limited to low-stress work, defined as requiring no more than occasional decision-making. The RFC does account for limitations in concentration, persistence, and pace. It is not unsupported by substantial evidence. This is not a case where the Court "simply cannot discern [why the RFC omits mental limitations] because the ALJ did not in any way address the matter." *Richardson*, 511 F. Supp. 3d at 799. Nor is this a case where the ALJ made "no mention of the claimant's mental impairment in the RFC analysis." *Shamsud-Din v. Comm'r of Soc. Sec.*, No. 16-CV-11818, 2017 WL 3574694, at *6 (E.D. Mich. July 24, 2017), *report and recommendation adopted*, 2017 WL 3531438 (E.D. Mich. Aug. 17, 2017).

Miller argues, "The Appeals Council found a limitation to 'maintain attention for 2 hour periods' was not sufficient to properly account for Plaintiff's limitations." D.E. 16 at 4 (quoting D.E. 10 at 822). But, as noted, the 2022 RFC contained additional restrictions flowing from Miller's mental limitations. The 2022 RFC does not flaunt the Appeals Council's remand order, as evidenced by the fact the Appeals Council itself found no error in the 2022 RFC. D.E. 10 at 715 ("[W]e find that the Administrative Law Judge's decision complies with the orders of the U.S. District Court and Appeals Council").

Second, Miller argues the ALJ wrongly rejected the opinion of consultive psychological examiner Skaggs concerning Miller's moderate limitations in concentration, persistence, and pace—without any valid rationale. D.E. 13 at 9. Miller says that, although the ALJ stated this opinion from Skaggs was "not fully consistent with the evidence in the record," this explanation is "too vague to permit review." *Id*. at 10. Miller notes that ALJ Kleber gave Skaggs's opinion great weight in 2019, but lesser weight in 2022. *Id*.

Dr. Skaggs conducted her consultive examination of Miller back in May 2017. The records are at pages 489-92 of the administrative record. Dr. Skaggs found that Miller's "attention to task and concentration appeared normal." D.E. 10 at 491. "No deficits were noted in his memory for details." *Id*. His "speech flow was normal," his "thought contents appeared appropriate to mood and circumstances," and the "organization of his though processes did appear logical." *Id*. Miller's "overall intellectual ability was judged to be in the low average range. His capacity for abstraction was intact. The claimant's judgment and reality testing appeared limited. Insight into the nature of his difficulties appeared adequate. His decision-making skills appeared normal." *Id*.

Dr. Skaggs's report contains a definition for "moderate" functional capacities. "Moderate" means "There is moderate limitation in this area, but the individual is still able to function satisfactorily." D.E. 10 at 492. Dr. Skaggs's report concludes:

1. Mr. Miller's capacity to understand, remember, and carry out instructions towards the performance of simple, repetitive tasks appears affected by his symptoms of depression to a slight degree.

2. His ability to tolerate stress and pressure of day-to-day employment appears affected by these impairments to a moderate degree.

3. His ability to sustain attention and concentration towards the performance of simple, repetitive tasks appears affected by these impairments to a moderate degree.

4. His capacity to respond appropriately to supervisors and coworkers in a work setting appears affected by these impairments to a moderate degree.

*Id*. To the extent Dr. Skaggs addresses concentration/persistence/pace, it appears she determined these skills were moderately affected by his impairments, with "moderate" defined as having some limitations, but "still able to function satisfactorily." This is different from "moderate" limitations under SSA regs, which defines "moderate limitation" as when the claimant's

13

"functioning in this area independently, appropriately, effectively, and on a sustained basis is fair." Accordingly, Dr. Skaggs's determination was that Miller was "still able to function satisfactorily" in his "ability to sustain attention and concentration towards the performance of simple, repetitive tasks." Accordingly, it does not appear the 2022 RFC meaningfully conflicts with Dr. Skaggs's findings.

It is true that ALJ Kleber found Dr. Skaggs "only partially persuasive" and gave "less weight" to Dr. Skaggs's finding that Miller had "moderate limitation in his ability to attend and concentrate on simple repetitive tasks." D.E. 10 at 747. The ALJ found this opinion in tension with Dr. Skaggs's own finding that Miller's "attention to task and concentration appeared normal." *Id.* (citing *id.* at 491). The ALJ's ascription of "less weight" is adequately explained in the record. Despite ascribing "less weight" to this aspect of Dr. Skaggs's opinion, ALJ Kleber did hold at step three that Miller had moderate limitation in concentration/persistence/pace, and the RFC includes limitations that address these issues. Especially given Dr. Skaggs's own definition of "moderate," the Court is unable to find any meaningful contradiction between Dr. Skaggs's opinion and the ALJ's findings. The RFC is not unsupported by substantial evidence.

Third, Miller faults the ALJ for not including limitations in "persistence and pace" in the RFC conveyed to the vocational expert. D.E. 13 at 11-12. As explained, the 2022 RFC did include limitations related to persistence and pace. *See* D.E. 10 at 779-80 (hearing transcript). The 2022 RFC is not erroneous. It was therefore not error for ALJ Kleber to recite this RFC to the vocational expert.

14

## IV. CONCLUSION

The Court being sufficiently advised, **IT IS HEREBY ORDERED THAT** the ALJ's decision is **AFFIRMED**. Plaintiff's request to remand (D.E. 13) is **DENIED**. Judgment will be entered in favor of the Commissioner by separate contemporaneous order.

This the 26th day of January, 2024.

Signed By:
*Hanly A. Ingram*
United States Magistrate Judge